UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:    Tersal Construction Services, Inc.,

                             Debtor.

Case No. 14-30164
Chapter 11

Appearances:
Dirk J. Oudemool, Esq.
Attorney for Debtor Tersal Construction Services, Inc.
333 East Onondaga Street
Syracuse, NY 13202

Mitchell J. Katz, Esq.
Adam F. Kinney, Esq.
Menter, Rudin & Trivelpiece, P.C.
Attorneys for Northland Associates, Inc. and Buckley-Clay Associates, LLC
308 Maltbie Street, Suite 200
Syracuse, NY 13204-1439

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

### Memorandum-Decision and Order

Pending before the court are two motions: (i) the motion of Northland Associates, Inc. ("Northland") to prohibit the use of cash collateral, for relief from the stay as to personal property in Debtor's possession, and/or to convert or dismiss the case; and (ii) the motion of Northland's affiliate, Buckley-Clay Associates, LLC, for relief from the stay as to premises leased to the Debtor (the "Motions"). Northland is a secured creditor with a blanket security interest covering all assets of the Debtor. After an initial hearing on the Motions, the court scheduled an evidentiary hearing which the parties agreed should be limited to consideration of the issue as to whether a transaction memorialized in a "Quitclaim Bill of Sale" executed by Debtor on November 2, 2012 (Ex. F, the "Bill of Sale") was an absolute transfer of the listed items of equipment to Northland or was merely a transaction intended for security.

1

At the evidentiary hearing held on May 22, the court accepted into evidence a number of documents and heard testimony from: Salvatore "Sam" Fresina, President and Owner of Debtor; Raymond Swierk, Northland's Controller; and Ronald E. Burlin, Northland's Chief Estimator. Upon consideration of all of the evidence before the court— the stipulated facts, the testimony of the witnesses and the documentary evidence adduced at the hearing, the court finds that the Bill of Sale was an absolute transfer of Debtor's interest in the scheduled equipment.

It is a long standing rule in New York that parol evidence is admissible to establish that "a transfer purporting to be absolute [on its face] was in fact for security." N.Y. U.C.C. § 9-203, official cmt. 3; *see Barry v. Colville*, 129 N.Y. 302, 306 (1891); *Liberatore v. Olivieri Dev.*, 741 N.Y.S.2d 371, 372 (N.Y. App. Div. 4th Dep't 2002). Whether a conveyance in the form of an absolute transfer was meant instead to serve as security is a question of fact dependent upon the intent of the parties. *See, e.g., Owen v. Lundstrom (In re Owen)*, 349 B.R. 66, 71 (Bankr. D. Idaho 2006); *Covey v. Davlin & DWE, Inc. (In re Hobbick)*, Nos. 97–83543, 99–8168, 97–83541, 99–8169, 2001 WL 34076375, at *4-*5 (Bankr. C.D. Ill. Sept. 10, 2001). To preserve the integrity of written agreements, the burden falls on the debtor to prove—by clear and convincing evidence—that a conveyance absolute on its face was intended to serve only as security. *See Ensign v. Ensign*, 120 N.Y. 655, 656 (1890); *Liberatore*, 741 N.Y.S.2d at 372.

The court finds nothing from the four corners of the document to suggest that the Bill of Sale is anything other than an absolute conveyance of Debtor's interest in the scheduled equipment. Debtor does not challenge that the Bill of Sale purports on its face to be an absolute conveyance. The document is entitled "Quitclaim Bill of Sale" and identifies Debtor as "Seller" and Northland as "Purchaser." Ex. F. It states that for the sum of $200,000, Debtor "convey[s] and transfer[s] . . . all of [its] right, title and interest" in the equipment described in the attached

2

schedule to Northland.[1] It also states that the "as is," "where is" sale is subject to the senior lien in favor of M&T Bank. *Id.*

Nonetheless, to sustain its burden to show that the Bill of Sale was intended as security, Debtor asserts the following: (i) Mr. Swierk indicated to Mr. Fresina that the transaction was to "further secure" Northland on its loans; (ii) the equipment remained in the possession of Debtor for several months after the transaction; (iii) Debtor continued to make payments to M&T Bank on the debt secured by the equipment and did not report a sale of the equipment on its 2012 tax returns; and (iv) based upon the valuation proffered by Mr. Fresina, the consideration offered for the equipment was insufficient, thus suggesting that Debtor did not intend to sell the equipment.

Notwithstanding Debtor's assertions, the court accords more weight to the evidence proffered by Northland, including Mr. Burlin's valuation of the equipment as of the date of the Bill of Sale. Among other things, Northland reported the purchase on its fixed assets schedule. It duly depreciated the equipment in accordance with the requirements of the Internal Revenue Code and encouraged Debtor to provide the appropriate information to its accountants so that Debtor's tax returns would also reflect the sale. Debtor acknowledges that Northland held a perfected security interest in all of Debtor's assets at the time of the transfer, but failed to explain why Northland would benefit from further securitization, particularly when Northland acknowledged that M&T Bank held a superior lien on the equipment.[2] Further, although Mr. Fresina offered to sell the equipment to Northland on at least one occasion after the Bill of Sale was executed, in other correspondence, he acknowledged that the equipment was owned by

---

[1] Although Debtor disputes whether a schedule was attached to the Bill of Sale when it was executed, Debtor does not dispute that the inventory schedule proffered by Northland accurately described its inventory at the time of the transaction. Joint Stipulation, Doc. 39.

[2] The court will not second guess the wisdom of Northland's business decision to purchase the encumbered equipment. Mr. Swierk explained that Northland was under pressure from its bonding company to balance its books relative to its notes with Debtor, and assumed the risk relative to M&T security interest. The parties agree that appeasing Northland's bonding company was the motivation behind the execution of the Bill of Sale.

3

Northland. *Compare* Ex. I, Debtor's Ex. 1 *and* Exs. G, H. In any event, Mr. Swierk responded to Mr. Fresina's subsequent offers by reminding him that Northland had already purchased the equipment.

The court does not credit Mr. Fresina's valuation of Debtor's equipment. Mr. Fresina testified that the equipment was worth $665,000–$700,000 at the time of transfer. Although Mr. Fresina admitted that some of the equipment had been in service for more than five years and showed visible signs of wear, oddly, his valuation did not account for any depreciation of the equipment.[3] For that matter, Mr. Fresina's testimony and Debtor's own exhibits indicate that his valuation of the equipment varied significantly over the years.

Further, the court does not give great weight to the fact that Debtor remained in possession and control of the equipment for several months after the transfer. Mr. Swierk testified that depriving Debtor of its equipment at the time of the transfer would potentially have caused greater delays and additional overruns on the projects for which Northland had contracted with Debtor. Also, the transaction occurred at the start of winter when masonry projects are not normally performed. Thus, there would be little benefit in removing the equipment at that time.

The court gives no weight to the fact that Debtor failed to report the sale on its 2012 taxes.[4] Mr. Fresina testified that he did not keep "good records" for the business. Furthermore, his August 19, 2013 email, Ex. H, suggests that to the extent that the sale was not reflected on the tax returns, such omission was in error.

In sum, the court finds that Debtor failed in its burden to establish by clear and convincing evidence that the Bill of Sale was intended for security. Based upon the totality of the evidence, the court concludes that the Bill of Sale intended to absolutely transfer the

---

[3] On cross-examination, Mr. Fresina stated that in his opinion Debtor's equipment actually appreciated over time.
[4] The 2012 tax returns, which were prepared by a third party, have not been offered into evidence.

4

equipment to Northland.

*Notice of Hearing*

The court sets a further hearing on the Motions to be held at 11:35 a.m. on June 26, 2014, at the United States Bankruptcy Court, James M. Hanley United States Courthouse and Federal Building, 100 South Clinton Street, 2nd Floor, Syracuse, New York. At the hearing, the parties shall update the court as to any settlement reached as to the issues raised by the the Motions, or, whether they wish the Motions to be set for further hearing.

So Ordered.

Dated: June 9, 2014  
       Syracuse, New York

Margaret Cangilos-Ruiz  
United States Bankruptcy Judge